

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-2008

# ET Browne Drug Co v. Cococare Prod Inc

Precedential or Non-Precedential: Precedential

Docket No. 06-4543

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"ET Browne Drug Co v. Cococare Prod Inc" (2008). *2008 Decisions.* Paper 603.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/603

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 06-4543 & 06-4658

E.T. BROWNE DRUG CO.,
a New Jersey corporation,

Appellant / Cross-Appellee

v.

COCOCARE PRODUCTS, INC.,
a New Jersey corporation,

Appellee / Cross-Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 03-cv-05442)
District Judge: Honorable Peter G. Sheridan

Argued December 13, 2007

Before: SLOVITER and AMBRO, <u>Circuit Judges</u>
POLLAK,[*] <u>District Judge</u>

Opinion filed: August 5, 2008

Arnold B. Calmann, Esquire
Saiber, Schlesinger, Satz & Goldstein
One Gateway Center, Suite 1300
Newark, NJ   07102-5311

Edward M. Laine, Esquire (Argued)
David A. Prange, Esquire
Oppenheimer, Wolff & Donnelly
45 South Seventh Street
3400 Plaza VII
Minneapolis, MN   55402-0000

Counsel for Appellant/Cross-Appellee

Robert Mahoney, Esquire (Argued)
Jeanne Hamburg, Esquire
Norris, McLaughlin & Marcus
721 Route 202-206
P.O. Box 1018
Somerville, NJ   08876-1018

---

[*]Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Counsel for Appellee/Cross-Appellant

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

This case involves a dispute between two manufacturers of personal care and beauty products that contain cocoa butter. E.T. Browne Drug Co., Inc. ("Browne") claims that it has a protected trademark interest under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, in the term "Cocoa Butter Formula,"[1] which features prominently on its products. Cococare Products, Inc. ("Cococare") disputes the validity of this asserted trademark. The District Court entered summary judgment in Cococare's favor after concluding that the term is generic and thus may not receive protection from the trademark laws. We agree that Browne has not demonstrated that "Cocoa Butter Formula" is a protectable trademark, but reach that conclusion by a different path. We believe that a genuine issue of material fact exists as to whether "Cocoa Butter Formula" is generic. But even

---

[1]The term appears with and without capitalization throughout the parties' briefs and the District Court's opinion. It appears in all capitals on the products depicted in various exhibits and in Browne's registrations. We use "Cocoa Butter Formula" for consistency but attach no significance to this choice.

3

assuming it is descriptive, this term must have a secondary meaning to be protectable. Because Browne failed to identify sufficient evidence to create a genuine issue of material fact on that point, we affirm the grant of summary judgment in favor of Cococare. We remand, however, to allow the District Court to enter an appropriate order under 15 U.S.C. § 1119.

## I.  Background and Procedural History

Browne, a New Jersey corporation, markets personal care and beauty products containing cocoa butter under the brand name "Palmer's." The "Palmer's" line of cocoa butter products is the sales leader among personal care and beauty products containing cocoa butter. The packaging containing those products displays "Palmer's" and "Cocoa Butter Formula." "Palmer's Cocoa Butter Formula" is on the principal register of the United States Patent and Trademark Office ("PTO"), and thus this term is presumptively valid as a trademark. *See* 15 U.S.C. § 1057(b). In contrast, "Cocoa Butter Formula" is on the PTO's supplemental register but not on the principal register. The statutory presumption of validity accordingly does not attach to that term. *See id.* § 1094.

Cococare, a New Jersey corporation, also sells personal care and beauty products containing cocoa butter, although its sales are far smaller than those of Browne. In 1994, it introduced new products formulated with cocoa butter and Vitamin E, labeling them "Cococare Cocoa Butter Formula."

4

This use of "Cocoa Butter Formula" gave rise to its dispute with Browne.

"[T]he parties agree that Browne knew of its claims against Cococare since 1993 but did not prosecute them because Cococare sales were 'de minimis'; and Browne could only confirm two 'sightings' of Cococare from 1994 - 2000." Amended Opinion Granting Summary Judgment at 4, *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, No. 03–5442 (PGS) (D.N.J. Sep. 20, 2006) ("Dist. Ct. Op.") (footnote omitted). Browne first objected to Cococare's use of the term "Cocoa Butter Formula" in 2002 after it became aware of a product flyer from a seller of Cococare's products.

Browne then brought suit in the United States District Court for the District of New Jersey after a cease-and-desist letter sent to Cococare failed to cause it to stop using the contested term. Browne alleged, *inter alia*, that Cococare had violated the Lanham Act and equivalent New Jersey law by its use of the term "Cocoa Butter Formula." Cococare counterclaimed, *inter alia*, for cancellation of Browne's supplemental registration of "Cocoa Butter Formula" and amendment of Browne's principal registration of "Palmer's Cocoa Butter Formula." It moved for summary judgment on the grounds that "Cocoa Butter Formula" is not a protectable trademark because it is a generic term, that Browne's claims are barred by the defenses of laches and unclean hands, and that those claims should be dismissed because Cococare's use of

5

"Cocoa Butter Formula" was a fair use of a product descriptor. Browne cross-moved for summary judgment on the genericness and fair use issues, and on Cococare's counterclaims.

The District Court concluded that "Cocoa Butter Formula" is a generic term and entered summary judgment in favor of Cococare. It rejected Cococare's counterclaims, concluding that no "substantive evidence" supported the allegations that Browne made deliberately fraudulent statements to the PTO. Dist. Ct. Op. at 12–13. The Court noted that Cococare had admitted it suffered no actual damages as a result of Browne's alleged actions, and reasoned that, because "supplemental registration provides no substantive rights, [] there would be no reason to force the cancellation of a supplementally registered mark." *Id.* at 13.

Browne appeals. It argues that the District Court erred in concluding that the term "Cocoa Butter Formula" is generic.[2] Cococare appeals the District Court's refusal to direct the PTO to cancel the supplemental registration of "Cocoa Butter Formula" or to direct the addition of a disclaimer to that term on the principal registration of "Palmer's Cocoa Butter Formula." Cococare also renews the arguments that it is entitled to entry of summary judgment in its favor because "Cocoa Butter Formula"

---

[2]Browne does not discuss the claims it brought in District Court under New Jersey law. Those claims therefore do not feature in our analysis of this appeal.

6

has not acquired secondary meaning, Browne waited too long to act and made misrepresentations to the PTO such that its action is barred, respectively, by the defenses of laches and unclean hands, and its (Cococare's) use of the term "Cocoa Butter Formula" amounts to fair use.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction over the Lanham Act claims pursuant to 28 U.S.C. § 1338(a) and pendent jurisdiction over the state law claims under 28 U.S.C. § 1338(b).  We have jurisdiction pursuant to 28 U.S.C. § 1291.   Our review is plenary.  *Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 978 (3d Cir. 1993).   On appeal from a grant of summary judgment, our Court exercises the same standard of review as the District Court and considers whether genuine issues of material fact exist that preclude entry of summary judgment. *Id*.

## III.    Discussion

### A.    The Protectability of the Mark "Cocoa Butter Formula"

To establish trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, a plaintiff must prove that (1) the mark is valid and legally protectable, (2) it owns the mark, and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods or services. *Freedom*

7

*Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 469–70 (3d Cir. 2005). We thus begin our analysis by asking whether "Cocoa Butter Formula" is a valid, legally protectable trademark.

> Terms asserted as trademarks may fall in four categories:
>
> > [1] arbitrary (or fanciful) terms, which bear no logical or suggestive relation to the actual characteristics of the goods; [2] suggestive terms, which suggest rather than describe the characteristics of the goods; [3] descriptive terms, which describe a characteristic or ingredient of the article to which it refers[;] and [4] generic terms, which function as the common descriptive name of a product class.

*A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir. 1986) (internal citation and quotation marks omitted). The Lanham Act protects only some of these categories of terms. Working backward, it provides no protection for generic terms because a first-user of a term "cannot deprive competing manufacturers of the product of the right to call an article by its name." *Id.* at 297 (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)); *see also Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Generic terms are not registrable and a registered mark may be cancelled at any time on the ground[] it has become generic.").

8

In contrast, the Lanham Act protects descriptive terms if they have acquired secondary meaning associating the term with the claimant. *Canfield*, 808 F.2d at 292–93, 296; *see also Berner*, 987 F.2d at 979. Finally, trademark law protects suggestive and arbitrary or fanciful terms without any showing of secondary meaning. *Berner*, 987 F.2d at 979 (citing *Canfield*, 808 F.2d at 297).

Browne has the burden in this case of proving the existence of a protectable mark because "Cocoa Butter Formula" does not appear on the PTO's principal register. *Canfield*, 808 F.2d at 297. It contends that "Cocoa Butter Formula" should receive protection from the trademark laws as a descriptive term that has acquired secondary meaning. Cococare responds that the term should receive no protection because it is generic. The parties thus pose a difficult question of trademark law. *See id.* at 296 ("Courts and commentators have recognized the difficulties of distinguishing between suggestive, descriptive, and generic marks.").

Whether "Cococare Butter Formula" is generic or descriptive, and whether that term has acquired secondary meaning, are questions of fact. *See id.* at 307 n.24 (noting that "Courts of Appeals have generally held that a designation's level of inherent distinctiveness is a question of fact"); *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992) (identifying secondary meaning as a question of fact). We therefore ask whether Browne has presented sufficient evidence

to create a genuine issue of material fact as to those questions. *See* Fed. R. Civ. P. 56(c); *Berner*, 987 F.2d at 978.

As noted, we conclude that Browne has produced evidence sufficient to create a genuine issue of material fact on its claim that the term "Cocoa Butter Formula" is not generic, but descriptive. But as we also conclude that Browne has failed to produce sufficient evidence to create a genuine issue of material fact as to whether the term has acquired secondary meaning, we reach the same result as the District Court – "Cocoa Butter Formula" may not receive the protections of the Lanham Act.

### 1. Is "Cocoa Butter Formula" Generic?

#### a. The Primary Significance Test and the Limited Circumstances in Which *Canfield*'s Alternative Test Applies

This appeal raises the initial question of the proper test under which to evaluate whether the term "Cocoa Butter Formula" is generic and thus not protectable as a trademark. "The jurisprudence of genericness revolves around the primary significance test, which inquires whether the primary significance of a term in the minds of the consuming public is the product or the producer." *Canfield*, 808 F.2d at 292–93. We ask "whether consumers think the term represents the generic

name of the product [or service] or a mark indicating merely one source of that product [or service]." *Dranoff-Perlstein Assocs.*, 967 F.2d at 859 (alterations in original) (quotation marks and citation omitted). If the term refers to the product (*i.e.*, the genus), the term is generic. If, on the other hand, it refers to one source or producer of that product, the term is not generic (*i.e.*, it is descriptive, suggestive, or arbitrary or fanciful). To give an example, "Cola" is generic because it refers to a product, whereas "Pepsi Cola" is not generic because it refers to the producer. To repeat, Cococare contends that "Cocoa Butter Formula" is generic whereas Browne argues it is descriptive.

The District Court did not apply the primary significance test. It instead applied an alternative test stated in *Canfield*.[3]

[3]The District Court treated this question in a somewhat confusing manner. It first stated that it is a "fundamental question in this case . . . whether 'cocoa butter' or 'cocoa butter formula' is the relevant product genus for evaluating genericness." Dist. Ct. Op. at 7. It then acknowledged that "the product genus in this action, however, is not in dispute." *Id.* This accorded with its previous statements that Browne describes the genus as "skin care products in the cocoa butter category" and that Cococare describes it as "personal care and beauty aid products in the cocoa butter market," *id.* at 5 (quotation marks omitted), and that any distinction between "skin care products" and "personal care and beauty aid products" is one without a difference, *id.*

The Court continued in apparent agreement with the

11

Neither party disputed that approach. We conclude, however, that the District Court should not have ventured beyond the primary significance test to any alternative gloss.

*Canfield* addressed situations in which a manufacturer created a new product and it was not clear if it also had created a new product genus. It involved a dispute over the term "Diet Chocolate Fudge Soda."[4]  "[A] fundamental question . . . [was] whether chocolate soda or chocolate fudge soda is the relevant product genus for evaluating genericness." *Id.* at 298–99. The primary significance test[5] could not answer that question, we

parties, reasoning that the products bearing the term at issue "are part of [a] new genus; consisting of personal care and beauty aid products, including creams, lotions, skin moisturizers and soaps, formulated with cocoa butter." *Id.* at 7. It then departed from the submissions of the parties and its own prior recognition of their agreement, however, by stating that "cocoa butter formula is the relevant product class." *Id.* at 8.

[4]We varied in our inclusion and exclusion of the word "Diet" in *Canfield*. We use that word throughout for consistency but attach no significance to that choice.

[5]*Canfield* refers to the primary significance test as if it differs from the consumer understanding test. *See id.* at 299 (referring to "the primary significance test and its related test of consumer understanding"). More recently, we have treated the concept of consumer understanding as included in primary significance. *See Berner*, 987 F.2d at 982 (referring to the primary

reasoned, since it applied "only after we have determined the relevant genus." *Id.* at 299.

Our Court concluded that the following rule would help us fill in this gap of identifying the appropriate genus for analysis: "If a producer introduces a product that [1] differs from an established product class in a particular characteristic, and [2] uses a common descriptive term of that characteristic as the name of the product, then the product should be considered its own genus." *Id.* at 305–06. In those circumstances, "[w]hether the term that identifies the product is generic then depends on the competitors' need to use it. At the least, if no commonly used alternative effectively communicates the same functional information, the term that denotes the product is generic." *Id.* at 306 (internal citation omitted). *See generally Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 145 (2d Cir. 1977) (discussing *Canfield* and describing its test as a complement to, rather than a rejection of, the primary significance test when a court cannot readily determine the genus of a new product).

significance test as focusing on "consumer understanding"). Either way, the primary significance test remains the central test of genericness in our Circuit. *See Canfield*, 808 F.2d at 299. Yet we see nothing in the record indicating that either party has asked that we or the District Court use the consumer understanding test to gauge whether a term is generic.

*Canfield* does not control here for a simple reason: this case does not pose the question addressed in *Canfield*. The "question . . . at the core" of *Canfield* was whether "the relevant product category or genus for purposes of evaluating genericness is chocolate soda or chocolate fudge soda." *Id.* at 293. We do not face a comparable question, as the parties before us do not dispute whether we should use an existing genus or a new genus in our analysis. They instead agree, with only insignificant quibbles over wording, that "Cocoa Butter Skin Care Products" or an equivalent term defines the category.

To understand why this distinction matters, we return to the principles underlying *Canfield*. It addressed a weakness in the primary significance test – the presumption that a court knows the product's genus. In most cases, that genus will be obvious, even for new products. A slight change in a detergent's formula, for example, likely will not create a new product genus. Problems may arise, however, if a product differs from existing products in what *Canfield* calls a "particular characteristic." Examples may include the addition of a new flavor or a new featured ingredient (such as honey in the "Honey Brown Ale" at issue in *Genesee Brewing Co.*). The manufacturer then likely has created a new type of product. That manufacturer may well need to use descriptive terms in the product name to identify the product to consumers. This raises the question of the proper genus for the Court's genericness analysis: the established product class or a new product class that modifies the established product class with the new

14

characteristic.

*Canfield* addressed this problem by articulating a test that supplies the proper genus for a genericness analysis. Its test applies when a manufacturer uses the following equation: name of new product = name of the established product class ("Diet Chocolate Soda" in *Canfield*) + name of the new characteristic ("Fudge" in *Canfield*). *See id.* at 305–06.

The established product class in our case is "Skin Care Products" or "Lotion." The new characteristic is "Cocoa Butter." Browne could have called its new products "Cocoa Butter Skin Care Products" or "Cocoa Butter Skin Care Lotion." Use of these terms would have satisfied *Canfield*'s equation (name of the new characteristic + name of the established product class) and triggered its test. *Canfield* stated that the primary significance test would not have been useful because the genericness determination would have depended on the unresolved threshold definition of the genus ("Cocoa Butter Skin Care Products" vs. "Skin Care Products").

Of course, when it introduced skin-care products containing cocoa butter (*i.e.*, adding a new characteristic), Browne did not label those products with the term "Cocoa Butter Skin Care Products" or "Cocoa Butter Lotion." Instead, it used "Cocoa Butter Formula." This term does not frustrate the application of the primary significance test because it does not raise the question whether to use "Cocoa Butter Formula" or

15

"Formula" as the proper genus for our analysis. Cococare also has not suggested that "Formula" identifies the established product class. Browne does not make baby formula after all, or sell algorithms or recipes. Nor does any record evidence suggest that consumers use "Formula" to describe the skin care product category. Browne's use of a different equation to name its product ("Cocoa Butter Formula" = name of the new characteristic ("Cocoa Butter") + a term *not* describing the established product class ("Formula")) does not bring into play the weakness in the primary significance test that *Canfield* addressed because it does not raise the question of the proper genus for our analysis. Applying *Canfield* here amounts to attempting to remedy a non-existent problem. We therefore will evaluate the genericness of the term "Cocoa Butter Formula" under the primary significance test only.

**b.  Is the Term "Cocoa Butter Formula" Generic Under the Primary Significance Test?**

"[T]he primary significance test . . . inquires whether the primary significance of a term in the minds of the consuming public is the product or the producer." *Id.* at 292–93.[6] We

---

[6]The public need not know the identity of the producer for the primary significance of the term to be the producer. *Canfield*, 808 F.2d at 300 (citing S.Rep. No. 98–627, at 5 (1984)).

applied that test in *Berner*, asking whether the evidence demonstrated that the term at issue primarily signified the product genus to consumers. *Berner*, 987 F.2d at 980–81. Like the term under dispute in *Berner*, the meaning of "Cocoa Butter Formula" should be "evaluated by examining its meaning to the relevant consuming public." *Id.* at 981. That evaluation requires looking at the mark as a whole, not dissecting it into various parts. *Id.*[7] We therefore inquire whether the consuming public understands "Cocoa Butter Formula" to refer to a product genus or to a producer. We ask specifically if the evidence submitted by Browne creates a genuine issue of material fact as to its contention that the consuming public does not understand the term "Cocoa Butter Formula" to refer to a product genus (*i.e.*, that it is not generic, but descriptive in this case).

Plaintiffs seeking to establish the descriptiveness of a mark often use one of two types of survey evidence. J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed. 2008) [hereinafter McCarthy on Trademarks] describes a "Teflon survey" as "essentially a mini-course in the generic versus trademark distinction, followed by a test." 2 McCarthy on Trademarks § 12:16. That survey runs a participant through a number of terms (such as "washing machine" and

---

[7]Under this analysis, the District Court should not have broken up the term for purposes of its analysis and considered "Cocoa Butter" separately from "Formula." *See* Dist. Ct. Op. at 5, 7.

17

"Chevrolet"), asking whether they are common names or brand names. After the participant grasps the distinction, the survey asks the participant to categorize a number of terms, including the term at issue. *Id.* (discussing survey created for *E. I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc.*, 393 F. Supp. 502 (E.D.N.Y. 1975)).

A "Thermos survey," on the other hand, asks the respondent how he or she would ask for the product at issue. If, to use the term under dispute in the case from which the survey gets its name, the respondents largely say the brand name ("Thermos") rather than the initial product category name ("Vacuum Bottle"), the survey provides evidence that the brand name ("Thermos") has become a generic term for the product category. 2 McCarthy on Trademarks § 12:15 (discussing survey used in *American Thermos Prods. Co. v. Aladdin Indus., Inc.*, 207 F.Supp. 9 (D.Conn. 1962)). To put this in the terms of the primary significance test, the term would be generic because the consumers would be using it to refer to the product category rather than a producer who makes products within that product category.

Browne conducted a survey in this case that generally adheres to the "Thermos survey" model. The survey posed a number of open-ended questions asking respondents to "identify or describe the product category" in which its products fall. It asked each of the 154 valid respondents "[w]hat word or words would you use to identify or describe a skin care product which

18

contains cocoa butter?" and "[i]f you needed to identify or describe a skin care product containing cocoa butter, what word or words would you use <u>instead of</u> or <u>in addition to just</u> saying cocoa butter, if any?"  Neither "Cocoa Butter Formula" nor any form of the word "Formula" appeared among the respondents' answers.

The District Court appears to have admitted the survey. Cococare does not suggest on this appeal that we should exclude it.  Nor do we see a reason to do so.  We therefore ask whether the survey evidence creates a genuine issue of material fact as to whether "Cocoa Butter Formula" is not generic, but descriptive.

The District Court concluded that the survey had "little or no probative value" and "should be afforded little or no weight."  We understand the Court to have made that determination within the summary judgment framework rather than to have engaged in any inappropriate weighing of the evidence at the summary judgment stage.  *See*, *e.g.*, *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984) (holding a survey to be "so badly flawed that it cannot be used to demonstrate the existence of a question of fact").  Cococare argues that we should review this decision for clear error.  It points to our decision in *Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 19 F.3d 125, 135–36 (3d Cir. 2005), where we employed that standard of review.  *Rorer* did not

19

come to us at the summary judgment stage, however. It involved a District Court that had weighed survey evidence during the course of a four-day evidentiary hearing on a motion for a preliminary injunction.[8]

---

[8]We have explained the importance of the distinction between the preliminary injunction and summary judgment stages of litigation:

> In the posture before us–a trademark case in which summary judgment proceedings follow a grant of a preliminary injunction in the plaintiff's favor–the distinction between the standards for summary judgment and preliminary injunction become critical. Failure to strictly observe the principles governing summary judgment becomes particularly significant in a trademark or tradename action, where summary judgments are the exception. [I]nferences concerning credibility that were previously made in ruling on [a] motion for a preliminary injunction cannot determine [a] Rule 56(c) motion and should not be used to support propositions that underpin the decision to grant the motion for summary judgment.

*Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006) (alterations in original) (citation and quotation marks omitted). The distinction between the two standards remains as important in the context of weighing the results of a survey as in making credibility determinations (the issue in *Doebler*).

Our case involves no such weighing of evidence or factual findings. The District Court's role here was to evaluate the record evidence to determine whether Browne's claims could proceed to trial under the summary judgment standard. In this context, we do not defer to the District Court's resolution of that legal question. Instead, we will conduct plenary review as we have on other occasions when a District Court has granted summary judgment. *See Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998); *see also Nintendo*, 746 F.2d at 115, 118 (showing no deference to District Court opinion).[9]

The District Court faulted the survey for what it perceived as two errors. It criticized the survey for not using the term "Palmer's," believing that this omission "undermine[d] Browne's theory of the case" and made the questions "flawed and misleading." Dist. Ct. Op. at 9. The Court also believed that the survey contained leading questions. For example, it considered the question "What <u>word</u> or <u>words</u> would you use to <u>identify</u> or <u>describe</u> a skin care product which contains cocoa butter?" to be highly suggestive in order to evoke a specific response.

---

[9]We reject Browne's argument that we should use an abuse of discretion standard of review because we do not agree that this is a question of the admissibility of the surveys. *See In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 749 (3d Cir. 1994) (applying a deferential standard of review to rulings on admissibility of expert opinions).

We do not agree these questions were so misplaced. The survey was intended to reveal whether customers use the word "Cocoa Butter Formula" to describe cocoa butter skin care products or lotions. The parties' genericness dispute turns on that question. We thus steer away from the criticism that "some of the survey questions use two of the three words (cocoa butter) of Browne's source identifier (cocoa butter formula)." *Id.* We struggle to conjure how Browne could have pursued the core genericness inquiry without doing so.[10] As we believe the questions are not highly suggestive or misleading, this case does not, as the District Court suggests, find similarities in *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 592 (3d Cir. 2002), and *Rorer*, 19 F.3d at 135.[11]

---

[10]Cococare presents expert evidence indicating that "Cocoa Butter" may have discouraged the use of those words in the answers. But this does not deprive the survey of probative value. It merely creates a question as to how much weight a jury should give the survey.

[11]In addition to this substantive difference, those cases differ procedurally from this case. In both of those cases we reviewed the weight given to surveys by District Courts considering motions for entry of preliminary injunctions. *See supra* note 8 (discussing procedural distinction between preliminary injunction and summary judgment stages of trademark litigation).

22

We also do not perceive any reason for Browne to have included the word "Palmer's" in its survey. This litigation focuses on the term "Cocoa Butter Formula," not on the registered trademark "Palmer's Cocoa Butter Formula." The inclusion of the word "Palmer's" in the survey would have confused matters and would have taken the survey outside the "Thermos survey" model.[12]

Browne's survey does have non-trivial flaws, however. Only 30% of valid respondents used a noun identifying the product genus (*e.g.*, lotion, cream). The majority of respondents either answered with an adjective describing the product class (*e.g.*, healing, moisturizing) or did not answer. This suggests that the questions confused many respondents. The survey may have caused this confusion by deviating from the standard "Thermos survey" model by asking respondents for terms describing the products in addition to asking (as a "Thermos survey" should) for terms identifying the products. The survey

---

[12]Cococare does not distinguish in its opening brief between "Teflon surveys" and "Thermos surveys." It implicitly argues, however, that Browne should have conducted the former rather than the latter when it contends that "[t]he proper question would have asked survey respondents in a straightforward fashion whether the designation 'cocoa butter formula' identified a brand, or a common name." Cococare does not explain why Browne had to conduct a "Teflon survey" rather than a "Thermos survey."

23

likely would have been strongest if it had asked respondents, as the "Thermos survey" also did, how they would ask at a store for the type of product at issue.

These flaws nonetheless do not deprive the survey of probative value. The survey raises a reasonable inference that "Cocoa Butter Formula" does not describe the product genus in the opinion of the 46 respondents who described the product class. A reasonable jury could rely on that inference to conclude that consumers do not use the words "Cocoa Butter Formula" to describe the category of skin care products containing cocoa butter. Cococare could attack the inference at trial, but that does not stop the survey from creating a genuine issue of material fact. It is premature for us now to conclude that the survey does not provide probative evidence that "Cocoa Butter Formula" is not generic. Browne could have performed a better survey. Indeed, it might have rued the survey's design flaws after a trial. But the survey is strong enough to allow Browne to survive summary judgment on the genericness issue.

Browne also points to evidence that competitors use terms other than "Cocoa Butter Formula." This evidence tends to prove that the term is not generic. *See Canfield*, 808 F.2d at 306 n.20 ("Courts have long focused on the availability of commonly used alternatives in deciding whether a term is generic." (citing *Holzapfel's Compositions Co. v. Rahtjen's American Composition Co.*, 183 U.S. 1 (1901))). It indicates that other competitors (and thus Cococare) did not need to use

24

the word "Formula" to communicate to consumers the type of products that it sold. This bolsters our conclusion that a genuine issue of material fact exists on the question of genericness,[13] and thus the District Court should not have entered summary judgment that "Cocoa Butter Formula" is generic.[14] Instead, it should have proceeded to a secondary meaning analysis.

---

[13]In contrast, we struggle to perceive the relevance ascribed by Browne to the fact that dictionaries do not include the term "Cocoa Butter Formula." Not all generic terms appear in dictionaries, a fact so obvious Browne makes no effort to disprove it.

[14]The District Court appeared to reason that the registration of "Cocoa Butter Formula" on the PTO's supplemental register rather than its principal register weakens Browne's claim that the term is descriptive. We know of no support for that view. As the District Court correctly explained elsewhere, the validity of a term that does not appear on the principal register and is not distinctive (*i.e.*, one that is descriptive rather than suggestive, or arbitrary or fanciful) depends on its acquisition of secondary meaning. *See Berner*, 987 F.2d at 979 (explaining that arbitrary or suggestive terms are distinctive and automatically qualify for trademark protection, while descriptive terms only receive trademark protection after a showing of secondary meaning).

We also note that Browne is not entitled to summary judgment in its favor on the question of genericness. The weaknesses in the genericness survey alone create a genuine issue of material fact on that point.

25

## 2. Assuming "Cocoa Butter Formula" is Descriptive, Has it Acquired Secondary Meaning?

Because a genuine issue of material fact exists on the question whether "Cocoa Butter Formula" is generic, the parties normally would need to proceed to trial to resolve that issue. Even assuming that Browne prevailed and proved "Cocoa Butter Formula" to be descriptive, it also would need to show that the term had acquired secondary meaning which associated it with Browne.

Cococare moved for summary judgment on the basis that Browne had not produced evidence creating a genuine issue of material fact on the secondary meaning question. The District Court set out in its opinion how a secondary meaning analysis would proceed and laid out relevant factors from our case law. But it did not go further. Instead, the Court concluded that "[i]n this case [there] are other controlling factors which taken as a whole show that cocoa butter formula is generic." Dist. Ct. Op. at 12. The parties presented the secondary meaning question to the District Court, however, and we have their arguments before us. We thus resolve that question because of our interest in judicial economy, and affirm on this basis the District Court's entry of summary judgment. *See Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (stating that we may affirm on any ground supported by the record).

26

Secondary meaning is a new and additional meaning that attaches to a word or symbol that is not inherently distinctive. *See generally* 2 McCarthy on Trademarks § 15:1. We have explained:

> Secondary meaning exists when the trademark is interpreted by the consuming public to be not only an identification of the product, but also a representation of the product's origin. Secondary meaning is generally established through extensive advertising which creates in the mind of consumers an association between different products bearing the same mark. This association suggests that the products originate from a single source. Once a trademark which could not otherwise have exclusive appropriation achieves secondary meaning, competitors can be prevented from using a similar mark. The purpose of this rule is to minimize confusion of the public as to the origin of the product and to avoid diversion of customers misled by a similar mark.

*Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1228 (3d Cir. 1978) (citations omitted).

We have identified an eleven-item, non-exhaustive list of factors relevant to the factual determination whether a term has acquired secondary meaning:

(1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion.

*Commerce Nat'l Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000). "[T]he evidentiary bar must be placed somewhat higher" when the challenged term is particularly descriptive. *Id.* at 441.

Browne's proffered showing of secondary meaning includes the following evidence:

- its use and promotion of the term "Cocoa Butter Formula" continuously for 20 years;

- the substantial amounts of money it has spent promoting the term "Cocoa Butter Formula;"

- the nature and quality of the advertising in support of the term "Cocoa Butter Formula;"

- Cococare's alleged intent to copy the term

28

"Cocoa Butter Formula;" and

- the increase in the sales of products bearing the term "Cocoa Butter Formula."

This evidence may seem, at first blush, to support Browne's claim that the term "Cocoa Butter Formula" has gained secondary meaning. But serious flaws cause it to fail to create a genuine issue of material fact on the question of secondary meaning.

The evidence's core deficiency is that while it shows Browne used the term "Cocoa Butter Formula" on many occasions over a long period of time, it does not show Browne succeeded in creating secondary meaning in the minds of consumers. Although the evidence leaves no doubt that Browne hoped the term would acquire secondary meaning, nothing shows that it achieved this goal. Jurors would have to make a leap of faith to conclude that the term gained secondary meaning because the record fails to provide meaningful support. A jury could evaluate the quality of the advertising or consider the rise in product sales, but it would have to guess what lasting impression the advertising left in the mind of consumers or what portion of Browne's revenue growth it caused.

We indicated in *Commerce National Insurance Services* that a plaintiff might establish secondary meaning through

evidence of advertising and sales growth. *See id.* at 438.[15]  A plaintiff could create a reasonable inference, for example, that a term had gained secondary meaning by showing that it had appeared for a long period of time in a prevalent advertising campaign. Evidence of revenue growth simultaneous with such marketing would strengthen that inference, particularly if supported by evidence of other factors among those we listed in *Commerce National*.

This case, however, differs in an important way from such an example.  Browne has introduced no evidence indicating that it ever used "Cocoa Butter Formula" as a stand-alone term in marketing or packaging.  Instead, it always used the term connected with the "Palmer's," forming the phrase "Palmer's Cocoa Butter Formula."  For example, Browne's lotion bottles bore logos with "Palmer's" immediately above the words "Cocoa Butter Formula," creating one visual presentation for the consumer.  The marketing and sales evidence thus likely would raise a reasonable inference that "Palmer's Cocoa Butter Formula" has gained secondary meaning in the minds of the

---

[15]We do not suggest that a party attempting to establish secondary meaning always must show that marketing materials succeeded in creating buyer association or that the term contributed to sales growth.

public.[16]

But Browne wants to do something more complicated: it wants to establish that a portion ("Cocoa Butter Formula") of the larger term ("Palmer's Cocoa Butter Formula") has acquired an independent secondary meaning. Nothing in the record would allow a jury to evaluate the strength of the term "Cocoa Butter Formula" independently from the larger term including "Palmer's." We thus conclude, under the specific circumstances presented by this case, that the marketing and sales evidence provided by Browne does not create a reasonable inference that "Cocoa Butter Formula" has acquired secondary meaning.

Nor does Browne's asserted evidence of Cococare's intent to copy the term "Cocoa Butter Formula" create a genuine issue of material fact as to secondary meaning. This evidence pertains almost exclusively to trade dress (*i.e.*, the overall appearance of labels, wrappers, and containers used in

[16]This case does not put that question at issue. The parties do not dispute that Browne has a valid, registered trademark in the term "Palmer's Cocoa Butter Formula." Cococare does seek alteration of the principal registration of that term, but only to the extent it includes the term "Cocoa Butter Formula," which it asserts is generic.

packaging a product),[17] an issue not presented by this case.[18] Browne only identifies one piece of evidence that conceivably suggests an intent to copy. Cococare's founder testified that he may have known about Browne's use of "Cocoa Butter Formula" when Cococare began using that term on its own products. But he also testified that he decided to use the word "Formula" because it is a standard descriptor in the cosmetics industry. He never testified that he copied Browne and nothing in the record suggests that he did. Even viewing this evidence in the light most favorable to Browne, we cannot discern how a reasonable jury could conclude that Cococare intended to copy Browne's use of the term "Cocoa Butter Formula."

Browne could have overcome these deficiencies in its evidence by conducting a secondary meaning survey in the same way it conducted its genericness survey. It could have used survey evidence to show that "Cocoa Butter Formula" had acquired secondary meaning in the minds of consumers, thus creating a genuine issue of material fact on that issue.[19] We

---

[17]*See generally* 1 McCarthy on Trademarks § 8:1 (comparing trade dress and trademarks).

[18]Browne apparently dropped a trade dress claim because Cococare presented unrebutted evidence that it adopted the contested trade dress earlier than Browne.

[19]Cococare conducted a secondary meaning survey that it argues tends to prove a lack of secondary meaning in the term

never have held, and do not hold today, that a party seeking to establish secondary meaning must submit a survey on that point. However, Browne's failure to conduct a secondary meaning survey leaves it without evidence of any sort in this case of the secondary meaning of the term "Cocoa Butter Formula."

We thus conclude that Browne has failed to identify evidence creating a genuine issue of material fact on the question whether "Cocoa Butter Formula" has acquired secondary meaning. Cococare is entitled to entry of summary judgment on the basis that Browne lacks a protectable trademark interest in the term "Cocoa Butter Formula."

## B. Cancellation or Alteration of Registrations and Remaining Arguments

Having held "Cocoa Butter Formula" to be generic, the

---

"Cocoa Butter Formula." That survey does not support Browne's position. Instead, it arguably provides evidence against Browne and would be used by Cococare to rebut any evidence of secondary meaning offered by Browne. We need not attempt to discern, however, whether Cococare's survey undercuts any evidence by Browne. That is not our role at the summary judgment stage. Instead, we ask whether Browne has identified sufficient evidence to allow a jury to resolve the secondary meaning question in its favor. We conclude that it has not. Accordingly, we need not consider here any evidence offered in support of Cococare's position.

District Court briefly considered whether (as Cococare requested in a counterclaim) it should require a disclaimer of the "Cocoa Butter Formula" portion of the principal registration of "Palmer's Cocoa Butter Formula" and cancel the supplemental registration of "Cocoa Butter Formula." *See* 15 U.S.C. § 1119. This provision states in relevant part: "In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." *Id.* We have explained that "a controversy as to the validity of or interference with a registered mark must exist before a district court has jurisdiction to grant the cancellation remedy." *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873 (3d Cir. 1992). A controversy clearly existed as to the validity of the term "Cocoa Butter Formula" and its place on the supplemental register. This raises the question of the need for a disclaimer on the principal register of that portion of the larger mark "Palmer's Cocoa Butter Formula." Moreover, Cococare explicitly counterclaimed for modification of that larger mark. These circumstances meet *Ditri*'s requirement that "a controversy as to the validity of or interference with a registered mark must exist."[20]

---

[20]Since this case falls squarely within *Ditri*'s requirements, we need not define the exact contours of "controvers[ies] as to the validity of or interference with a registered mark." For example, we do not decide whether, in the absence of an

34

The District Court declined to order relief under § 1119, however. It apparently believed that a disclaimer of "Cocoa Butter Formula" on the principal registration of "Palmer's Cocoa Butter Formula" would not benefit Cococare. *See generally* 15 U.S.C. § 1119; 3 McCarthy on Trademarks § 19:63 (explaining effect of a disclaimer). Yet, even if Cococare will not benefit from that disclaimer, we should not allow the absence of a disclaimer on the principal register to confuse a future business into believing that it may not use the term "Cocoa Butter Formula." *Cf. Berner*, 987 F.2d at 979. As such, on remand the District Court should order that an appropriate disclaimer should be entered on the principal register.

The treatment of the supplemental registration is more complicated since a descriptive term lacking secondary meaning may not appear on the principal register, but may appear on the supplemental register. *See, e.g.*, *In re Bush Bros. & Co.*, 884 F.2d 569, 570 (Fed. Cir. 1989). The District Court should not enter any order regarding the supplemental registration unless for some reason Cococare proceeds to trial on its counterclaim and prevails on the issue of the genericness of the term "Cocoa Butter Formula." If Cococare does prove "Cocoa Butter Formula" to be generic, the District Court then could order the

---

appropriate counterclaim, a District Court may order the addition of a disclaimer to a term (*e.g.*, "Palmer's Cocoa Butter Formula"), including a portion found to be generic (*e.g.*, "Cocoa Butter Formula").

removal of that term from the supplemental register.

Cococare argues that Browne's trademark claim must fail because of Browne's failure to assert its rights in the term "Cocoa Butter Formula" in a timely fashion and, because of alleged misrepresentations to the PTO, Browne has "unclean hands." Cococare also argues that it should receive summary judgment on its affirmative defense that its use of the term "Cocoa Butter Formula" constitutes fair use. We need not reach these arguments in light of our conclusion that Browne does not have a protectable trademark right in the term "Cocoa Butter Formula."

## IV. Conclusion

We affirm the judgment of the District Court in all respects but one. We remand to allow the Court to enter an order addressing Cococare's request for relief under 15 U.S.C. § 1119.