NEWMAN, Circuit Judge,
concurring in part, dissenting in part.
I respectfully dissent from the grant of summary judgment whereby the court holds, summarily, that there can be neither patent nor trademark nor trade dress infringement of ERBE’s proprietary rights. I write separately with respect particularly to the trademark and trade dress issues, for the court has departed from established law and precedent. Canady does not dispute that it copied the blue color and the particular shade of blue of the ERBE probe; that is, that it copied the trade dress. The public interest in avoidance of deception or confusion looms particularly large in the medical/surgical field, where the surgeon’s experience of quality and performance, on recognition of the surgical device by its unique color, is a matter of public concern.
Common law property rights are of practical significance, and their sustenance is as much a judicial responsibility as are statutory rights. This court’s cursory authorization to a competitor to copy the distinctive color of this surgical probe, despite the evidence of likelihood of confusion as to the source and identity of the probe, is surely not subject to summary disposition in favor of the copier. ERBE suggests that there is deception and free-riding, for it was not disputed that the blue probes with black markings, manufactured by KLS Martin GmbH & Co. and imported by Canady for use with the ERBE equipment, are intended to mirror the blue color *1294 and black markings of the ERBE probes. Canady represented to the FDA that its imported probes are “the same as” the ERBE probes, and obtained expedited FDA approval based on that representation. Indeed, Canady’s probes are compatible only with ERBE’s electrosurgical equipment.
The district court held, on summary judgment, that the blue color is “functional.” However, ERBE established at least a genuine issue as to this question. Registration of the blue color for these products on the Supplemental Register required the applicant to show that the color is not functional. Trademark Manual of Examining Procedure § 1202.05(b) states:
A color mark is not registrable on the Principal Register under § 2(f), or the Supplemental Register, if the color is functional. Brunswick Corp. v. British Seagull Ltd., 35 F.3d 1527, 32 USPQ2d 1120 (Fed.Cir.1994), cert. denied, 514 U.S. 1050 [115 S.Ct. 1426, 131 L.Ed.2d 309] (1995); In re Owens-Corning Fiberglas Corp., 774 F.2d 1116, 227 USPQ 417 (Fed.Cir.1985).
Thus the color mark passed the test of non-functionality, upon agency examination.
The difference with respect to registration of a color on the Supplemental Register and the Principal Register does not relate to functionality, but to the need to establish secondary meaning for the particular color. Non-functionality does not of itself establish secondary meaning. See In re Owens-Corning Fiberglas Corp., 774 F.2d 1116 (Fed.Cir.1985) (criteria for registration on the Principal Register of the color pink for fiberglass insulation material); Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 166, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (holding that the existence of other, equally usable colors is relevant to whether a particular color is functional). In Qualitex the Court explained that a mark is functional “ ‘if it is essential to the use or purpose of the article or if it affects the cost or quality of the article,’ that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage.” 514 U.S. at 165, 115 S.Ct. 1300 (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)).
In accordance with the review procedures of the Administrative Procedure Act, the holding of the Patent and Trademark Office of non-functionality of the color blue for “flexible endoscopic probes for use in argon plasma coagulation,” receives administrative deference. Although ERBE had not obtained registration on the Principal Register, ERBE was not required to do so in order to rely on its Supplemental registration for its statutory benefits, as well as to assert its common law trademark and trade dress rights, see Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000) (holding that a product’s unregistered trade dress in the form of product design is protectable upon a showing of secondary meaning).
The district court improperly granted summary judgment on the trademark and trade dress issues. Precedent does not support this judgment. Canady’s argument that blue, this shade of blue, is the only color that can be distinguished from body fluids was directly contradicted by the expert declaration of Christian Erbe, Chairman of ERBE, USA, who declared that “Blue is one of many colors available for APC Probes. Any color, other than *1295 beige or red, would be clearly visible during endoscopic procedures.” Decl. of Christian O. Erbe ¶ 4, July 17, 2007 (J.A. 4938). At the summary judgment stage, the factual issue of whether blue, or this shade of blue, is the only color of the spectrum that contrasts with bodily fluids was fairly placed into dispute. For this factual question to be decided in favor of Canady at the summary judgment stage, Canady must establish that it is entitled to judgment in its favor, even on ERBE’s factual position. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (“The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.”).
My colleagues criticize Mr. Erbe’s declaration as “conclusory,” Maj. Op. 1289. However, his statement about the visibility of other colors is straightforward and in accord with common sense, and its correctness is unchallenged by Canady. The evidence offered by Canady in support of functionality is that one company advertises that its coagulation probe’s “blue color enhances positive endoscopic identification of the tip.” This advertisement was cited by the PTO during examination, and registration on the Supplemental Register was nonetheless granted. A reasonable jury could decide — as did the PTO — that the color blue for argon plasma coagulation tubes is not functional, and is capable of serving as a trademark.
The court also errs in its summary judgment that ERBE cannot establish secondary meaning. In addition to the evidence of copying of the blue color, Mr. Erbe declared:
5. ERBE has advertised and promoted the Blue Probe Mark in various marketing materials including brochures, giveaways at tradeshows and through use of the TRUE BLUE PROBE FOR ARGON PLASMA COAGULATION mark, Registration No. 2,852,359, which issued on June 15, 2004.
6. The color of the ERBE APC probes (“ERBE Blue”) is the corporate color of ERBE Elektromedizin GmbH. ERBE has used ERBE blue as part of its corporate identity, as part of its trade dress for medical devices, for various promotional items and in its literature and advertisements for more than thirty (30) years.
Decl. of Christian O. Erbe ¶¶ 5-6, July 17, 2007 (J.A. 4938).
As to copying, which the majority acknowledges in its list of factors relevant to secondary meaning but does not discuss, ERBE raises significant issues of possible passing off and consumer deception. The laws of trademark and trade dress are designed to protect the consumer as well as the purveyor. It does not serve the consuming public to eliminate legal protection of indicia of source and quality. See Qualitex, 514 U.S. at 164, 115 S.Ct. 1300 (“The law thereby ‘eneourage[s] the production of quality products,’ and simultaneously discourages those who hope to sell inferior products by capitalizing on a consumer’s inability quickly to evaluate the quality of an item offered for sale.” (internal citation omitted)).
ERBE states that its blue color serves to protect the consumer/user, for it is a conspicuous identification of its particular probe for argon plasma coagulation. ERBE states that of the many colors that could be used, Canady selected the ERBE shade of blue for the sole purpose of profiting from the reputation established for ERBE’s product. The panel majority dis *1296 counts this unrebutted evidence, and observes only the absence of other possible types of evidence relating to secondary meaning. However, the Third Circuit, like other circuits, does not set rigid rules for all forms of trademark and trade dress. See E.T. Browne Drug Co. v. Cococare Prods. Inc., 538 F.3d 185, 200 n. 15 (3d Cir.2008) (“We do not suggest that a party attempting to establish secondary meaning always must show that marketing materials succeeded in creating buyer association or that the term contributed to sales growth.”).
My colleagues state that there is “evidence ... that the color blue is prevalent in the medical field ... and several companies use blue endoscope probes,” Maj. Op. 1289, apparently drawing this conclusion from the advertisement considered by the PTO and plaintiff ConMed’s authorized blue probe. Whether secondary meaning was established is a question of fact, not subject to adverse inferences on summary judgment. The factual issue of likelihood of confusion, upon the undisputed intentional copying of this shade of blue, must be considered. ERBE has created at least a genuine issue of material fact as to whether its trade dress, as well as its trademark, is protectable. My colleagues err in finding these facts adversely, on summary judgment.
The judicial obligation is more complex than simply to facilitate “competition,” as the panel majority asserts. The avoidance of deception of the consumer is a purpose of trade dress law. At the summary judgment stage, ERBE provided sufficient evidence to negate the movant’s arguments with respect to the functionality and distinctiveness of its trade dress. Summary judgment that ERBE has no protectable right in its blue endoscopic argon probe was improperly granted. From my colleagues’ contrary holding, I must, respectfully, dissent.