**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3255
_____

SABINSA CORPORATION,

Appellant.

v.

CREATIVE COMPOUNDS, LLC

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-04-cv-04239)
District Judge:  Hon. Dennis M. Cavanaugh

Argued on May 13, 2009

Before:   AMBRO and ROTH, <u>Circuit Judges</u>
and FISCHER*, <u>District Judge</u>

*Judge Nora Barry Fischer, United States District
Judge for the Western District of Pennsylvania, sitting by
designation.

(Opinion filed: July 9, 2010)

James H. Hulme, Esquire **(Argued)**
Arent, Fox, Kintner, Plotkin & Kahn, LLP
1050 Connecticut Avenue, N.W., Suite 500
Washington, DC   20036

                    Counsel for Appellant Sabinsa Corporation

Sean R. Kelly, Esquire
Saiber, LLC
One Gateway Center, 13th Floor
Suite 300
Newark, NJ   07102-5311

                    Counsel for Appellant Sabinsa Corporation

Brian J. McMahon, Esquire
Kevin McNulty, Esquire **(Argued)**
Gibbons, P. C.
One Gateway Center
Newark, NJ   07102-5310

                    Counsel for Appellee Creative Compounds, LLC

---

O P I N I O N

---

**ROTH**, <u>Circuit Judge</u>:

Sabinsa Corporation appeals the District Court's judgment in favor of Creative Compounds, LLC, on Sabinsa's trademark infringement and unfair competition claims. The District Court found that there was no likelihood of confusion between Sabinsa's mark, ForsLean, and Creative Compounds's mark, Forsthin, both of which refer to *Coleus forskohlii* extract, an ingredient used in weight management products. Because the District Court erred in its findings on the *Lapp* factors and its ultimate finding on likelihood of confusion, we will reverse the judgment. Further, because the undisputed facts weigh heavily in favor of Sabinsa so that any reasonable fact finder, weighing the *Lapp* factors properly, would find that Sabinsa had demonstrated a likelihood of confusion, we conclude that there is no need to remand for a re-weighing by the District Court of the *Lapp* factors. We therefore remand this case for entry of judgment in favor of Sabinsa.

## I. **Background**

The following facts are undisputed.

Forskohlin is an extract derived from the roots of the plant *Coleus forskohlii*, a member of the mint family, found primarily in India. It is manufactured by harvesting and drying the *Coleus forskohlii* root and then extracting the forskohlin into a highly-concentrated slurry. The slurry is then combined with inactive ingredients to make various concentrations, which are sold in powder form.

3

Sabinsa, an ingredient supplier for nutraceutical[1] manufacturers, was founded in 1988 by Dr. Muhammed Majeed, a scientist with experience in the pharmaceutical industry. In 1996, Dr. Majeed began research into the potential use of forskohlin to promote lean body mass. After completing a clinical trial, Sabinsa filed an intent-to-use application for the trademark, ForsLean, formed by combining "Fors" from forskohlin with "Lean" for lean body mass. Sabinsa first marketed ForsLean to nutraceutical manufacturers in 2000. Sabinsa has also created pamphlets marketing ForsLean directly to the public. ForsLean was Sabinsa's highest revenue-generating product for at least five years preceding the trial in the District Court.

In 2003, a severe drought struck India and affected Sabinsa's supply of forskohlin. As a result, Sabinsa both worked to keep its customers interested in ForsLean and spent significant resources helping farmers in India cultivate *Coleus forskohlii* to ensure a continued supply in the future. Forskohlin was available again in the spring of 2004, in part due to Sabinsa's efforts. Sabinsa thereafter created the "ForsLean

promise," a commitment to its customers to ensure the supply of forskohlin in the future.

Creative Compounds is also an ingredient supplier to the nutraceutical industry although it operates with only seven

---

[1] The nutraceutical industry provides ingredients for suppliers, manufacturers, and marketers of nutritional supplements.

employees, none of whom is a scientist or Ph.D., and it conducts no research and development. Creative Compounds began selling forskohlin at the end of 2002. It did not, however, adopt the trade name Forsthin for its product until the spring of 2004 – just as Sabinsa's supply problems were coming to an end. Though there is no indication that Creative Compounds ever had a problem with supply associated with the drought in India, it heavily promoted "The Return of Coleus" as it introduced its new Forsthin brand: "Not long ago, Coleus was one of the most powerful options in stimulant-free weight loss. That was until raw material shortages and low-quality extracts made maintaining a Coleus formula a nightmare. Those days are over." Creative Compounds made very few sales of forskohlin in 2002, 2003, and 2004, but sold more than 1000 kilograms in 2005, nearly 600 kilograms in 2006, and nearly 700 kilograms in 2007.

Sabinsa sent a cease-and-desist letter to Creative Compounds in the summer of 2004, soon after the latter began using the name Forsthin. Within a week and without contacting Sabinsa, Creative Compounds filed a declaratory judgment action in the United States District Court for the District of Missouri. Sabinsa then filed this suit, and the Missouri suit was dismissed in favor of this one.

Sabinsa's Complaint alleged five claims, all of which required that it prove both its ownership of a valid and legally protectable trademark and a likelihood of confusion caused by Creative Compounds's use of the mark Forsthin. *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir.

2008). Creative Compounds has conceded that Sabinsa owns the ForsLean mark and that the mark is valid and legally protectable. Therefore, the only issue for trial was "whether or not Defendant's use of the mark Forsthin is likely to create confusion in the marketplace when compared to Plaintiff's mark Fors[L]ean."

On June 16, 2008, after a bench trial, the District Court read into the record an oral decision in favor of Creative Compounds. Sabinsa appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Standard of Review

We exercise plenary review over the District Court's legal conclusions regarding the Lanham Act. *See Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 279 (3d Cir. 2001). Factual findings concerning the likelihood of confusion are reviewed for clear error. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). "Clear error exists when, giving all deference to the opportunity of the trial judge to evaluate the credibility of witnesses and to weigh the evidence, we are left with a definite and firm conviction that a mistake has been committed." *Id.* at 194 (quotation marks and citation omitted). Though "[l]ikelihood of confusion is a factual question[,] . . . legal principles govern what evidence may, or must, be considered by the District Court in reaching that conclusion, and also what standards apply to its determination." *Id.* at 210.

Pursuant to Federal Rule of Civil Procedure 52, a trial

court must make clear factual findings to support its conclusions. 9 Wright & Miller, Federal Practice & Procedure § 2574, at 690. Rule 52 is not satisfied "by the statement of the ultimate fact without the subordinate factual foundations for it which also must be the subject of specific findings." *O'Neill v. United States*, 411 F.2d 139, 146 (3d Cir. 1969). "If [subordinate findings] did not enter into the process by which the ultimate factual finding was made, then it was without any supporting foundation." *H. Prang Trucking Co., Inc. v. Local Union No. 469*, 613 F.2d 1235, 1238 (3d Cir. 1980)(citation omitted).

## III. The District Court's Likelihood of Confusion Analysis

"To prove likelihood of confusion, plaintiffs must show that consumers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Checkpoint Sys.*, 269 F.3d at 280 (internal quotation marks removed). In *Interpace Corp. v. Lapp, Inc.,* we set forth the factors which may indicate a likelihood of confusion:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark;
> (2) the strength of the owner's mark;
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;
> (5) the intent of the defendant in adopting the mark;

7

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of similarity of functions; and

(10) other factors suggesting the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.

721 F.2d at 463. "None of these factors is determinative in the likelihood of confusion analysis and each factor must be weighed and balanced one against the other." *Checkpoint Sys.*, 269 F.3d at 280. In reviewing a district court's analysis of the *Lapp* factors, we can reverse the court's conclusions if the relevant factors are not properly set forth and not properly weighed. *See Kos Pharmaceuticals v. Andrx Corporation*, 369 F. 3d 700, 711-12 (3d Cir. 2004).

In *Kos*, a trademark case involving the marks "ADVICOR" and "ALTOCOR," we reversed a district court's likelihood of confusion decision because it had erred in its analysis of mark similarity, overemphasized customer sophistication, applied the wrong standards regarding intent, and ignored several other relevant *Lapp* factors. *Id.* at 711–12. The same district judge made similar errors here. In finding that there was no likelihood of confusion between ForsLean and Forsthin, the District Court engaged in detailed analysis of only

8

three of the relevant *Lapp* factors and failed to discuss much of the evidence presented by Sabinsa. The District Court then asserted, "This Court is not going to comment on all of the testimony offered at trial. Suffice it to say, I am satisfied that the testimony taken as a whole amply supports the Court's decision." However, while it is true that a district court may find that "certain of the *Lapp* factors are inapplicable or unhelpful in a particular case," the court must still "explain its choice not to employ those factors." *See A & H Sportswear*, 237 F3d at 214 n.8. Here, the District Court failed to explain whether it viewed these remaining factors as neutral or irrelevant or how it weighed and balanced the combined factors. Further, its reasoning concerning the three factors it chose to analyze is flawed.

Typically, when a district court fails adequately to support its findings, we merely remand for a re-weighing of the applicable factors. Where the facts are largely undisputed, however, "'we need not remand' if application of the correct standard could support only one conclusion." *Kos*, 369 F.3d at 712 (quoting *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.*, 40 F.3d 1431, 1451 (3d Cir. 1994)); *see also Lapp*, 721 F.2d at 460 (reversing and directing entry of judgment). Such a remand would be a waste of judicial resources. In *Kos*, for example, we observed, "Regardless of how the factual disputes might be resolved, any reasonable factfinder weighing the *Lapp* factors in accordance with the correct legal standards would hold [in favor of Kos]." *Kos*, 369 F.3d at 725. Accordingly, as we did in that case, we will review the findings of the District Court, along with the evidence presented by the parties, to determine whether, in light of the controlling legal principles, the facts

9

and/or the failures in the District Court's analysis compel a result as a matter of law.

## IV. **The Individual *Lapp* Factors**

### A. **Similarity of Marks (*Lapp* Factor One)**

"The single most important factor in determining likelihood of confusion is mark similarity." *A & H Sportswear*, 237 F.3d at 216. Marks are confusingly similar "if ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 477 (3d Cir. 1994). The proper test is not a side-by-side comparison but, rather, "whether the labels create the same overall impression when viewed separately." *Kos*, 369 F.3d at 713. Overall impression is created by the sight, sound, and meaning of the mark. *See A & H Sportswear*, 237 F.3d at 217. "'The degree of similarity . . . needed to prove likely confusion will vary with the difference in the goods . . .. Where the goods . . . are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products.'" *Kos*, 369 F.3d at 713 (quoting 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:20.1 (4th ed. 2003)).

The District Court found that this factor favors Creative Compounds, asserting that, beyond the shared letters "fors," ForsLean and Forsthin have "no other similarity." The court's reasoning, however, contains clear errors. First, for its visual analysis, the District Court focused on minute differences in the

10

products' logos while ignoring evidence that both marks are often used in plain text without the surrounding graphics.[2] The District Court devoted only one sentence to a visual comparison of the words ForsLean and Forsthin apart from their logos and that sentence only contrasted the words "thin" and "lean" rather than the "overall impression." However, looked at as a whole, ForsLean and Forsthin share all but three letters, have the same dominant syllable and end letter, and have the same number of syllables. Under these circumstances, the District Court clearly erred in finding that the words are not visually similar. *See Kos*, 369 F.3d at 713 (because ADVICOR and ALTOCOR are "[b]oth . . . seven-letter, three-syllable words that begin and end with the same letters and the same sounds . . . the district court clearly erred in failing to recognize that this factor weighs in [the senior user's] favor").

Likewise, in analyzing the "connotative differences" between ForsLean and Forsthin, the District Court ignored evidence and failed to make sufficient subordinate findings. The court stated that it "accepts Defendant's arguments that a

_____

[2]Even the District Court's comparison of the logos appears misguided. The "ordinary customer" is supposed to have "only general recollection" of one mark when encountering the second. *See Fisons Horticulture*, 30 F.3d at 477–78. By that standard, the two logos seem strikingly similar: Each contains the respective product name, with the second syllable set off, placed in front of foliage to symbolize the *Coleus forskohlii* plant. Alone, however, this likely would not merit vacatur, given the deference owed to the District Court's findings.

11

different commercial impression is made by the word 'lean' versus 'thin'" and that "[t]hin would convey to the consumer . . . weight loss, whereas lean would convey a lean body type." As an initial matter, again the District Court erred by comparing "lean" and "thin" rather than ForsLean and Forsthin. *See Fisons Horticulture*, 30 F.3d at 477–78. More centrally, the District Court's finding is contrary to undisputed evidence at trial, none of which was cited in its opinion: Creative Compounds uses "thin" and "lean" interchangeably in its other weight loss products, Creative Compounds's sales manager and one of its customers conceded at trial that "lean" invokes "weight loss" and that Sabinsa promotes ForsLean to end users as a "weight management" product. Indeed, during the trial, the District Court took "judicial notice that there are products out there, when they use the word 'lean,' that are weight loss products." Its ultimate finding that the words "thin" and "lean" "would convey" different mental impressions to consumers is impossible to reconcile with this earlier recognition that the terms are interchangeable to consumers.

In sum, the District Court clearly erred in failing to find that this factor favors Sabinsa.

### B. Strength of Mark (*Lapp* Factor Two)

To determine the strength of the mark, courts look to (1) the inherent features of the mark contributing to its distinctiveness or conceptual strength and (2) the factual evidence of the mark's commercial strength or of marketplace recognition of the mark. *See A & H Sportswear*, 237 F.3d at 221.

12

Courts classify the distinctiveness or conceptual strength of a mark as either (1) generic, like "Diet Chocolate Fudge Soda"; (2) descriptive, like "Security Center"; (3) suggestive, like "Coppertone"; or (4) arbitrary or fanciful, like "Kodak." *Id*. Arbitrary or fanciful marks use terms that neither describe nor suggest anything about the product. *Id*. Suggestive marks require consumer "imagination, thought, or perception" to determine what the product is. *Id.* Descriptive marks "forthwith convey[] an immediate idea of the ingredients, qualities or characteristics of the goods." *Id*. Generic marks "function as the common descriptive name of a product class." *Id.*

The District Court acknowledged that the "Fors" in ForsLean and Forsthin "is apparently an abbreviation of the generic term of the product, Coleus forskohlii." It then concluded that "[fors] is not a mere arbitrary term, but, rather, a prefix used by each party combined with either the word 'lean' or 'thin.'" Never, however, did the court assign a classification for the ForsLean mark; rather, in evaluating the mark's strength, the court merely stated:

> Defendant argues that Plaintiff's mark is conceptually weak because it is highly suggestive. Sabinsa argues that its mark is commercially strong based on its advertising efforts, press mentions and its receipt of two industry awards regarding its product. However, testimony at trial reflected the parties' sophisticated target customers were aware of both parties' marks and that there is no confusion. This factor does not support Plaintiff's position.

13

This analysis amounts to legal error, and it culminated in a clearly erroneous finding.

First, it does not follow that because Sabinsa and then Creative Compounds used "fors" as an abbreviation for *Coleus forskohlii*, the term is conceptually weak. As Sabinsa points out, the "V" in V-8 stands for "vegetable" and the "8" stands for the fact that the juice has eight vegetables, but V-8 is still an arbitrary term. *See Fisons Horticulture*, 30 F.3d at 478 n.17 (citing *Standard Brands, Inc. v. Smidler*, 151 F.2d 34, 36 (2d Cir. 1945) ("The letter V by itself no more signifies 'vegetable' than it does any other word of which it is the initial letter . . . . As much is true of the figure 8 . . . .")). There was no evidence presented that "fors" is a *generic* term for forskohlin. Accordingly, to the extent that the District Court meant to imply that the parties' use of "fors" as an abbreviation makes ForsLean a generic or descriptive term, this is not the law.

Second, beyond its brief discussion of the abbreviation "fors," the District Court did not analyze either the conceptual or commercial strength of ForsLean. Instead, as set forth above, it described the parties' arguments and then reiterated its finding that there had been no confusion between the two companies among its "sophisticated customers." Actual confusion and the sophistication of a party's customers, however, are different prongs of the *Lapp* test and were "impermissibly conflated" by the District Court. *See Kos*, 369 F.3d at 722. Creative Compounds argues that the District Court merely found that the lack of confusion among the parties' customers "trump[ed]" the parties' arguments concerning the conceptual and commercial strength of ForsLean and that the "strength of the mark is a less

14

significant 'confusion' factor when the buyers *know* the *actual* source of each product." This argument mischaracterizes the court's analysis. If the court had meant to find that the strength factor was in Sabinsa's favor but less important than other factors, it could have said so. Instead, the District Court found that the strength of the ForsLean mark "does not support Plaintiff's position." This was clear error.

Once again, because the facts underlying the strength analysis are manifest and undisputed, we will review the facts and law to determine whether they compel a particular result. Sabinsa argues that ForsLean is arbitrary or suggestive, while Creative Compounds argues that it is a descriptive mark because it combines a description of the product ("fors") with its intended application ("lean"). While "lean" is certainly a generic term, "fors" is not yet one. The parties to this case are the only two that use "fors" as an abbreviation for forskohlin, and while ForsLean is not a term that was created completely out of whole cloth, it certainly requires consumer "imagination, thought, or perception" to determine the nature of the product. *See A & H Sportswear*, 237 F.3d at 222. It would, thus, appear that ForsLean is a suggestive mark. Moreover, it was undisputed that the ForsLean mark is commercially strong. Accordingly, this factor favors Sabinsa as a matter of law.

**C. Purchasers' Care and Sophistication (*Lapp* Factor Three)**

"When consumers exercise heightened care in evaluating the relevant products before making purchasing decisions, courts have found there is not a strong likelihood of confusion.

15

Where the relevant products are expensive, or the buyer class consists of sophisticated or professional purchasers, courts have generally not found Lanham Act violations." *Checkpoint Sys.*, 269 F.3d at 284. However, where the group of buyers is a combination of professionals and ordinary consumers, the class as a whole is not held to the higher standard of care. *Id.* at 285.

Under the heading "[p]rice and customer sophistication," the District Court found that "the product is expensive and the customers are sophisticated purchasers who purchase the product after careful thought and analysis. . . . Usually, the customers are repeat customers. These customers exercise a high level of care, and, therefore, eliminates [sic] the likelihood of confusion." The District Court also noted that "these products are not sold over the counter" and that "both parties' customers regularly ask technical questions about the scientific and safety merits of the product prior to purchase." The court thus concluded that this factor favors Creative Compounds. The court further weighed this factor heavily in its ultimate conclusion that there is no likelihood of confusion.

The District Court's reasoning inappropriately treats the products' direct buyers—here, the manufacturers of nutraceuticals—as the only relevant consumers. In *Kos*, we criticized the parties and the district court for treating medical professionals as the only relevant consumers of pharmaceuticals, noting that "drugs are increasingly marketed directly to potential patients through, for example, 'ask-your-doctor-about-Brand-X' style advertising." *See Kos*, 369 F.3d at 715–16. Here, Sabinsa presented evidence—completely disregarded by the District Court—that it directly markets ForsLean through just this type

16

of advertising, distributing pamphlets to retail outlets for distribution to the public. The appropriate "standard of care to be exercised," therefore, should have been "equal to that of the least sophisticated consumer in the class"—the general consumer reading a ForsLean pamphlet who then chooses a nutraceutical containing forskohlin. *See Checkpoint Sys.*, 269 F.3d at 285 (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.3d 277, 293 (3d Cir. 1991)); *cf. Morgenstern Chem. Co. v. G. D. Searle & Co.*, 253 F.2d 390, 392 (3d Cir. 1958) (recognizing that "physicians and pharmacists . . . are carefully trained to detect differences in the characteristics of pharmaceutical products," but holding that this "does not open the door to the adoption by manufacturers of medicines of trade-marks or names which would be confusingly similar to anyone not exercising such great care"). The District Court thus committed legal error when it concluded that this factor weighs heavily in favor of Creative Compounds.

Once again, the facts are undisputed. Though the price of forskohlin to suppliers is relatively high, the neutraceuticals that contain forskohlin are clearly affordable to most interested consumers. Further, the sales process is as quick as a trip to the check-out counter. In addition, nutraceuticals, unlike pharmaceuticals, require no consultation with a professional and may often be impulse purchases. Moreover, there was no showing that consumers of nutraceuticals are highly sophisticated. Accordingly, this factor weighs in favor of Sabinsa.

**D. Length of Time Without Confusion (*Lapp* Factor Four)/Evidence of Actual Confusion (*Lapp* Factor Six)**

17

Evidence of actual confusion is frequently difficult to find. *See Checkpoint Sys.*, 269 F.3d at 291. As a result, we have determined that actual confusion is not necessary to demonstrate a likelihood of success. *See Fisons Horticulture*, 30 F.3d at 472. Evidence of actual confusion is nevertheless highly probative of a likelihood of confusion. *See Checkpoint Sys.*, 269 F.3d at 291. It was undisputed that ForsLean and Forsthin had co-existed for approximately three-and-a-half years at the time of trial without any evidence of actual confusion. Moreover, Sabinsa failed to submit survey evidence concerning actual confusion. Accordingly, the District Court did not err in concluding that these factors favor Creative Compounds.

### E. Intent of the Defendant in Adopting the Mark (*Lapp* Factor Five)

Evidence of a defendant's intent is not a prerequisite for finding a Lanham Act violation; such evidence, however, weighs heavily in favor of finding a likelihood of confusion. *See Id.* at 286. In evaluating this factor, courts must look at whether the defendant chose the mark to intentionally confuse consumers, and thereby capitalize on the senior user's goodwill, and whether the defendant gave adequate care to investigating its proposed mark. *See Kos.*, 369 F.3d at 721. "[A] defendant's mere intent to copy, without more, is not sufficiently probative of the defendant's *success* in causing confusion to weigh such a finding in the plaintiff's favor; rather, defendant's intent will indicate a likelihood of confusion only if an intent to *confuse* consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's." *A & H Sportswear*, 237 F.3d at 225–26.

18

The District Court did not mention specific evidence regarding Creative Compounds's good or bad intent; rather, the court found that "there is nothing in the record to suggest that Creative Compounds attempted to pass off its goods as Sabinsa's. In fact, the evidence is to the contrary: Creative Compounds has made efforts to distinguish itself and its Forsthin product from Sabinsa." The record belies these conclusions. In fact, far from there being "nothing in the record to suggest" bad intent, there was ample evidence that Creative Compounds attempted to pass off its product as Sabinsa's. Creative Compounds' personnel offered inconsistent testimony concerning their trademark searches prior to the company's adopting the Forsthin mark. There was also evidence that Creative Compounds's President and CEO falsely claimed to have conducted research that expanded on Sabinsa's discoveries regarding forskohlin. In addition, the timing of Creative Compounds's adoption of the Forsthin mark and its pamphlet touting the "return of Coleus"—both of which coincided with ForsLean renewing its supply of forskohlin following the drought in India and issuing a "ForsLean promise" to its customers regarding continued supply—would support an inference that Creative Compounds intended to trade on Sabinsa's goodwill and confuse customers as to the source of its product. Indeed, the fact that Creative Compounds chose "fors," not "coleus," or "cole," or "col," as the first syllable of its brand name, while also promoting the "return of Coleus," would suggest that the adoption of the "Forsthin" brand name was aimed at "ForsLean."

The District Court was, of course, permitted to credit or discredit certain pieces of testimony and weigh them

19

accordingly. But in stating that there was "nothing in the record to suggest" Creative Compounds's bad intent, the District Court failed even to acknowledge the existence of contradictory evidence. Accordingly, its conclusory finding that this factor favors Creative Compounds is clearly erroneous.

Sabinsa argues that the District Court failed to apply the proper standards governing intent and that Creative Compounds's behavior in choosing a mark so similar to ForsLean should at least be considered reckless, rendering it sufficient to weigh this factor in Sabinsa's favor. In *Kos*, we held that the defendant's adoption of the ALTOCOR mark, after Kos had successfully used the ADVICOR mark for similar goods and with notice of its objections, was sufficient to weigh this factor in favor of Kos. *See* 369 F.3d at 721–22. Because the District Court in the instant case ignored whole swaths of evidence and failed to make any subordinate findings regarding intent, however, it is impossible to determine whether it appropriately comprehended the standard. Moreover, in contrast to the ADVICOR mark, both "ForsLean" and "Forsthin" bear some relationship to the underlying product; Creative Compounds's adoption of its mark, alone, therefore cannot be considered enough to weigh the intent factor for Sabinsa. Accordingly, unlike the other factors, the intent factor involves disputed factual issues, and we are unable to hold that it favors either party as a matter of law.

**F. Whether the Goods are Marketed Through the Same Channels of Trade and Advertised in the Same Media (*Lapp* Factor Seven)/Extent to Which Targets of the Parties' Sales Efforts are the Same (*Lapp* Factor Eight)**

20

"The greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion." *Checkpoint Sys.*, 269 F.3d at 288-89 (citation omitted). A court should consider the trade exhibitions, publications, and other media the parties use in marketing their products. *See id* at 489. Similarly, when the parties target their sales efforts to the same group of consumers, there is a greater likelihood of confusion between the two marks. *See id.*

The District Court did not key its oral findings to these factors, but nonetheless noted that the parties were "competitors." In any event, it is undisputed that the parties sell the same product through the same channels of trade and the same forms of advertising to the same target group of customers. Accordingly, these factors weigh in favor of Sabinsa as a matter of law.

**G.  Relationship of the Goods in the Minds of Consumers (*Lapp* Factor Nine)**

When ruling on this factor, a court should look at "how similar, or closely related, the products are." *Kos.*, 369 F.3d at 723. If the products "fall under the same general product category but operate in distinct niches," they will probably not be closely related. *Checkpoint Sys.*, 269 F.3d at 288 (holding that the District Court did not clearly err in finding that parties' products were unrelated even though both fell under the broader category of "corporate security" where the plaintiff focused on physical security and the defendant focused on information and computer security). "The question is whether the consumer might . . . reasonably conclude that one company would offer

21

both of these related products." *Fisons Horticulture*, 30 F.3d at 481.

The District Court made no findings as to this factor, but it is undisputed that the products are physically identical. Creative Compounds argues, as it did with respect to mark similarity, that Forsthin is a "weight loss" product while ForsLean is a "lean body mass" product. This argument is misplaced because the products are physically identical and both are marketed as weight management products. Creative Compounds further argues that buyers purchase the products directly from their sources and that "they are necessarily aware" that ForsLean and Forsthin are sold by separate companies. Customer sophistication, however, is *Lapp* factor three. *Lapp* factor nine focuses not on consumer sophistication but on the products themselves, since the determination is whether consumers *may* see them as related. *See Kos*, 369 F.3d at 723. Using that standard, this factor clearly weighs in favor of Sabinsa. *See Fisons*, 30 F.3d at 481 (citing cases where the relationship of goods was close enough to find likelihood of confusion, including: women's scarves and apparel with women's cosmetics and fragrances; liquor with restaurant selling liquor; batteries and lamps with light bulbs and lamps; and pipe tobacco and bar accessories with scotch whisky).

**H.  Other Facts Suggesting the Public Might Expect the Prior Owner to Manufacture Both Products (*Lapp* Factor Ten)**

In making this final determination under the *Lapp* test, courts should "look at the nature of the products or the relevant

22

market, the practices of other companies in the relevant fields, any other circumstances that bear on whether consumers might reasonably expect both products to have the same source." *Kos*, 369 F.3d at 724. The District Court made no findings not encompassed by the other factors, and neither party argues that any relevant evidence exists. Accordingly, this factor is neutral.

## V. **Weighing the *Lapp* Factors**

The most important factors, mark similarity and mark strength, favor Sabinsa. ForsLean and Forsthin are similar in appearance and meaning, and ForsLean is entitled to broad protection because it is a strong mark both conceptually and commercially. Moreover, ForsLean and Forsthin are physically identical, they are marketed to the same customers in the same ways, and the products' ultimate consumers do not exercise a particularly high level of care and sophistication when purchasing nutraceuticals. Accordingly, factors one, two, three, seven, eight, and nine favor Sabinsa as a matter of law. In contrast, since the District Court's findings regarding lack of actual confusion are supported by the record, factors four and six favor Creative Compounds.

There is a factual dispute concerning Creative Compounds's intent in creating its mark. Even assuming that the District Court would completely discredit the evidence of bad intent, however, it would be clear error to allow the factors in favor of Creative Compounds to outweigh Sabinsa's strong showing on mark similarity and the remaining factors. We have repeatedly held that neither intent nor actual confusion are prerequisites to a finding of likelihood of confusion. *See*

23

*Checkpoint Sys.*, 269 F.3d at 286, 291. As the Court of Appeals for the Second Circuit has observed, "intent is largely irrelevant in determining if consumers likely will be confused as to source. The history of advertising suggests that consumer reactions usually are unrelated to manufacturer intentions." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986). Likewise, we have recognized that evidence of actual confusion is often difficult to find because many instances go unreported. *Checkpoint Sys.*, 269 F.3d at 291.

As we did in *Kos*, we have carefully considered whether to direct the District Court on remand to re-weigh the *Lapp* factors in light of the proper legal standards. We conclude once again "that doing so would serve no useful purpose . . . [and] waste judicial resources." *See Kos*, 369 F.3d at 725. The undisputed facts weigh heavily in favor of Sabinsa as a matter of law, and any reasonable factfinder weighing the *Lapp* factors in accordance with the correct legal standards would hold that Sabinsa had demonstrated a likelihood of confusion. *See id.*; *cf. Fisons*, 30 F.3d at 482 (Garth concurring) ("I can see no purpose in remanding for retrial of Fisons' Lanham Act claims when it is so evident that the marks at issue here are confusingly

similar."). Accordingly, we see no reason to remand for further analysis on likelihood of confusion.

## VI. **Conclusion**

For the foregoing reasons, we will reverse the judgment in favor of Creative Compounds and remand this case for entry

of judgment in favor of Sabinsa and for other proceedings not inconsistent with this opinion.

AMBRO, Circuit Judge, concurring

I join Judge Roth's excellent opinion in full, and write separately only to emphasize two unusual features of this case. First, Sabinsa offered no evidence of actual confusion, a factor that we have previously described as "highly probative" in this context. *Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 291 (3d Cir. 2001). This is especially concerning here, where Sabinsa could have easily conducted a survey of customers to assess actual confusion in the relevant market. Given this, we could reasonably infer that Sabinsa expected that any survey results would undermine its case. Nonetheless, "[e]vidence of actual confusion is not required," and Judge Roth's *Lapp* analysis convinces me that, "while evidence of actual confusion would strengthen plaintiff's case, it is not essential." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 476 (3d Cir. 1994).

Second, the District Court concluded that the "consumers who purchase[d] these products [we]re sophisticated users in the business of marketing and/or manufacturing dietary supplements." Indeed, the record suggests that the parties' primary targets were the manufacturers of retail items and not either retailers or retail consumers. Because manufacturing requires a base level of expertise and attention to ingredients, in the mine-run case such purchasers are expected to be sophisticated enough to distinguish between brands—even when the relevant brands have names as similar as "Forsthin" and

"ForsLean." As we have previously explained, "[w]hen consumers exercise heightened care in evaluating the relevant products before making purchasing decisions, courts have found there is not a strong likelihood of confusion." *Checkpoint*, 269 F.3d at 284. Yet Judge Roth's opinion again persuades me that other factors in the *Lapp* analysis, including mark strength and mark similarity, outweigh concerns about the sophistication and care of the target audience. Furthermore, there is evidence in the record that weakens the District Court's analysis (or at least the weight it attributed to this factor), including evidence that manufacturers in this specific industry vary considerably in overall sophistication and care.