NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1124
_____

DAVID JOHN CARNIVALE

v.

STAUB DESIGN LLC;
JOHN STAUB; DAVID STAUB,

Appellants
_____

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-08-cv-00764)
District Judge: Honorable Sue L. Robinson
_____

Argued on November 15, 2011

Before: RENDELL and AMBRO, <u>Circuit</u> <u>Judges</u>
and JONES, II,* <u>District</u> <u>Judge</u>.

(Opinion Filed: January 4, 2012)
_____

Peter J. Duhig, Esq.
S. Lloyd Smith, Esq.    **[ARGUED]**
Buchanan Ingersoll & Rooney
1737 King Street, Suite 500
Alexandria, VA  22314
        *Counsel for Appellants*

_____

* The Honorable C. Darnell Jones, II, District Judge for the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

David John Carnivale     [ARGUED]
226 Natick Street
Staten Island, NY  10306
        *Pro se Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit</u> <u>Judge</u>

Staub Design LLC, John Staub, and David Staub (together, the Staubs) appeal a judgment the District Court entered against them on appellee David John Carnivale's Anticybersquatting Consumer Protection Act, or ACPA, claim.  *See* 15 U.S.C. § 1125(d).  In a summary judgment ruling and a decision after a bench trial, the District Court found that:  (1) Carnivale's trademark, "The Affordable House," was distinctive; (2)  the Staubs' domain name, www.theaffordablehouse.com, was identical or confusingly similar to Carnivale's mark; and (3) in registering their domain name, the Staubs acted with a bad faith intent to profit from Carnivale's mark.  We conclude that the District Court clearly erred in evaluating two of the factors pertinent to its conclusion that the Staubs acted with a bad faith intent to profit, and, therefore, will reverse and remand for further proceedings consistent with this opinion.

## I.

Carnivale is an architect who wrote a book called *The Affordable House*.  Since 1998, he has marketed his book and related blueprints through the website www.affordablehouse.com.  John and David Staub started Staub Design LLC, a residential design firm that focuses on the use of a special, lightweight building material,

autoclaved aerated concrete (AAC). In 2004, after coming across Carnivale's website, the Staubs registered and began using the domain name www.theaffordablehouse.com to provide information concerning their business and the use of AAC. In 2005 (after the Staubs' website was up and running), Carnivale applied to register "The Affordable House" as a trademark; in 2006, the Patent and Trademark Office granted Carnivale's application and registered his trademark. In this lawsuit, Carnivale claims that the Staubs' use of the domain name www.theaffordablehouse.com violated the ACPA, 15 U.S.C. § 1125(d).

## II.

The ACPA lists nine, non-exclusive factors that a court should consider in determining whether a defendant possessed the requisite bad faith intent to profit from the use of the plaintiff's mark. *See* 15 U.S.C. § 1125(d)(1)(B)(i). In this case, the District Court concluded that factors one through five and nine weighed in favor of a finding of bad faith, and that factors six through eight weighed against such a conclusion. Weighing all of the factors "qualitatively in light of the circumstances of the case as a whole," the District Court found that the Staubs acted in bad faith. *Carnivale v. Staub Design, LLC*, 754 F. Supp. 2d 652, 658-61 (D. Del. 2010). We agree with the Staubs that the District Court's analysis with respect to factors five, the defendant's intent to divert consumers, and nine, the extent to which the plaintiff's mark is distinctive or famous, was flawed.

## A.

The fifth statutory bad-faith factor is:

3

the [defendant's] intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

15 U.S.C. § 1125(d)(1)(B)(i)(V).  The District Court concluded that this factor weighed against the Staubs, as follows:

> Defendants' knowing and wholesale inclusion of the mark THE AFFORDABLE HOUSE in the domain name implies that defendants may have sought to divert customers away from plaintiff's website.  Moreover, both plaintiff and defendants are in the business of designing house plans and likely compete for at least part of their client bases.  The similarities between the parties' domain names and the nature of their businesses suggest that defendants might be motivated to divert web traffic away from plaintiff's website as a potential competitor.

*Carnivale*, 754 F. Supp. 2d at 660.

That analysis is not grounded in the record.  Rather than relying on actual evidence presented at trial, the District Court hypothesized that the Staubs "*may have* sought to divert customers away from plaintiff's website," that Carnivale and the Staubs "*likely* compete for *at least part* of their client bases," and that "similarities" between the parties' businesses "*suggest* that defendants *might* be motivated to divert web traffic away from plaintiff's website." *Id.* (emphases added).  While we understand and agree with the District Court's assertion that a plaintiff rarely will uncover *direct* evidence of an intent to divert consumers, *id.*, it does not follow that this factor may be satisfied without *any* specific facts from which intent to divert could be inferred, such as evidence tending

4

to show actual customer overlap or competition between the plaintiff's and defendant's businesses.

Further, that the Staubs "may have" or "might have been motivated" to divert customers away from Carnivale's website is not enough to tilt this factor in favor of Carnivale, who, as the plaintiff, bears the burden of proof.[1]  On remand, the District Court should consider whether the evidence in the record supports a finding that the Staubs did intend to divert customers from Carnivale.

**B.**

The ninth statutory factor is "the extent to which the mark incorporated in the [defendant's] domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section."[2]  15 U.S.C. § 1125(d)(1)(B)(i)(IX).  The District Court relied solely on its earlier determination, at summary judgment, that Carnivale's mark is "inherently distinctive" to conclude that this factor supported a finding of bad faith.  754 F. Supp. 2d at 661.

The District Court also clearly erred in this regard.  We do not read the ninth factor, concerning "the *extent to which*" the relevant mark "is or is not distinctive and

---

[1]  In addition to the foregoing, we also note that the District Court's assertion that the parties' businesses are similar and that they likely share customers seems at odds with its earlier conclusion, under the second statutory factor, that the phrase "THE AFFORDABLE HOUSE," which is descriptive of Carnivale's business, bears "no resemblance" to the Staubs' website or business.  *See id.* at 658.

[2]  Subsection (c) of the statute refers to marks that are distinctive, "inherently or through acquired distinctiveness," 15 U.S.C. § 1125(c)(1), and defines a "famous" mark as one that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner," *id.* § 1125(c)(2)(A).

famous," as merely duplicative of the element requiring that a mark be distinctive or famous to qualify for protection under the ACPA. *See* 15 U.S.C. § 1125(d)(1)(A)(ii)(I)-(III); *see also Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). Instead, the statutory language suggests that the District Court must separately assess the *extent* of the distinctive or famous nature of the mark.

Obviously, the District Court's determination at summary judgment that Carnivale's mark is "distinctive" must be considered as part of the factor nine analysis.[3] But the District Court also should have evaluated how strong or distinctive Carnivale's mark was. In this regard, the record suggests that Carnivale's mark, even if legally distinctive, is relatively weak. Although Carnivale used the phrase "The Affordable House" before the Staubs registered their website, his use does not appear to have been exclusive — the Staubs presented evidence of numerous other websites using the same phrase in similar ways. The phrase "The Affordable House" is descriptive, at best, and the evidence Carnivale submitted to establish secondary meaning does not include customer surveys, customer testimony, evidence of actual confusion, or several of the other criteria we typically consider in determining secondary meaning. *See Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 199 (3d Cir. 2008). Moreover, at the time the Staubs registered their domain name, Carnivale had not yet applied to register his trademark, and there was no indication on his website that he claimed exclusive rights to

---

[3] We do not here disturb the District Court's ruling that Carnivale's mark is distinctive, but we read that ruling narrowly. In our view, the District Court based its decision more on the Staubs' failures to make the proper arguments and to present legally relevant evidence to counter Carnivale's summary judgment motion than on the legal merits of the question.

the phrase "The Affordable House."  On remand, the District Court should evaluate the extent to which Carnivale's mark is distinctive or famous in light of this evidence and the record as a whole.

## C.

As the District Court properly recognized, applying the ACPA's bad-faith factors "'is a holistic, not mechanical, exercise.'"  754 F. Supp. 2d at 658 (quoting *Green v. Fornario*, 486 F.3d 100, 106 (3d Cir. 2007)).  Thus, although we conclude that the District Court erred in evaluating factors five and nine, we leave to the District Court the task of reanalyzing those factors and determining how any changes affect the overall balance of the factors in this case.

## III.

We will reverse the judgment and remand to the District Court for further proceedings consistent with this opinion.