NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1354
_____

DAVID JOHN CARNIVALE

v.

STAUB DESIGN LLC; JOHN STAUB; & DAVID STAUB

Appellants
_____

Appeal from the United States District Court
for the District of Delaware
(Civ. No. 08-764-SLR)
District Judge: Honorable Sue L. Robinson
_____

Submitted Under Third Circuit LAR 34.1(a)
October 31, 2013

Before: McKEE, *Chief Judge*, FISHER and SLOVITER, *Circuit Judges*

(Opinion Filed:  December 3, 2013)

_____

OPINION
_____


MCKEE, *Chief Judge*

Staub Design, LLC, John Staub, and David Staub (collectively, "Staub Design" or

"Appellants") appeal a judgment in favor of David John Carnivale for violation of the

Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, § 3002, 113 Stat. 1501 (1999) (codified at § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d) (2012)).  For the reasons set forth below, we will affirm the District Court's judgment.[1]

## I.

Because we write primarily for the parties who are familiar with this case, we need not recite the procedural or factual background.

"We exercise plenary review over the District Court's legal conclusions regarding the Lanham Act," but review its factual findings for clear error.  *Sabinsa Corp. v. Creative Compounds, LLC,* 609 F.3d 175, 182 (3d Cir. 2010).  "Clear error exists when, giving all deference to the opportunity of the trial judge to evaluate the credibility of witnesses and to weigh the evidence, we are left with a definite and firm conviction that a mistake has been committed." *Id.*

## A.

To prevail on his ACPA claim, Carnivale must prove that 1) "The Affordable House," "is a distinctive or famous mark entitled to protection," 2) Staub Design's domain name is "identical or confusingly similar to" his mark, and 3) Staub Design "registered the domain name[] with the bad faith intent to profit from [it]." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001); *see* 15 U.S.C. § 1125(d)(1)(A).  We are only

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 41 and 1291.

concerned with the third element: Staub Design's bad faith intent to profit from Carnivale's mark. *See* 15 U.S.C. § 1125(d)(1)(A)(i).[2]

The ACPA sets forth nine factors that a court should consider in determining the existence of bad faith. 15 U.S.C. § 1125(d)(1)(B)(i)(I)–(IX). As has been pointed out at various stages of this litigation, the factors should be applied in a holistic manner and "not [as a] mechanical[] exercise." *Green v. Fornario*, 486 F.3d 100, 106 (3d Cir. 2007). Moreover, the ACPA expressly allows courts to "consider any other elements of bad faith" not enumerated in the statute. *Advance Magazine Publishers Inc. v. Vogue Int'l*, 123 F. Supp. 2d 790, 799 (D.N.J. 2000); *see* 15 U.S.C. § 1125(d)(1)(B)(i) (using permissive language).

On remand, we instructed the District Court to reevaluate factor five, the "intent to divert consumers," and factor nine, "the extent to which the mark . . . is or is not distinctive and famous." *Carnivale*, 456 F. App'x at 107. We now review the results of that balancing process.

---

[2] In this second appeal, Staub Design also challenges the District Court's determination on the first element, whether Carnivale's mark is "distinctive." Appellants' Br. 4-21. Our opinion on the first appeal explicitly stated that "[w]e do not here disturb the District Court's ruling [on summary judgment] that Carnivale's mark is distinctive . . . ." *Carnivale v. Staub Design, LLC*, 456 F. App'x 104, 108 n.3 (3d Cir. 2012). Consequently, this challenge is foreclosed under "law-of-the-case doctrine" which "bars our reconsideration of issues previously resolved by an earlier panel." *Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cnty.*, 112 F.3d 652, 663 (3d Cir. 1997). When this Court affirms in part and reverses in part, the issues that we necessarily dispose of in the affirmance become "law-of-the-case" despite our remand for additional proceedings on separate issues. *Todd & Co., Inc. v. S.E.C.*, 637 F.2d 154, 156-57 (3d Cir. 1980); *see also Cowgill v. Raymark Indus., Inc.*, 832 F.2d 798, 802 (3d Cir. 1987). Staub Design does not assert any of the exceptions to the doctrine. *See Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116-17 (3d Cir. 1997).

**B.**

As to factor five,[3] although we agreed with the District Court that because "intent is rarely discernible directly, it must typically be inferred from pertinent facts and circumstances," *Audi AG v. D'Amato*, 469 F.3d 534, 549 (6th Cir. 2006) (quoting *Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 486 (E.D. Va. 2002)) (internal quotation marks omitted), we nevertheless directed the District Court to consider whether the record supported an inference that the Appellants intended to divert consumers. *Carnivale*, 456 F. App'x at 107.

In doing so, the District Court highlighted testimony in which John Staub admitted to viewing Carnivale's website, *www.affordablehouse.com*. That website was replete with home building-related content, and the District Court pointed to evidence that Appellants registered their domain name, *www.theaffordablehouse.com*, a short time after John Staub viewed Carnival's website. *Carnivale v. Staub Design, LLC*, Civ. No. 08–764–SLR, 2012 WL 6814251, at *2-3 (D. Del. Jan. 7, 2012). Moreover, the District Court refused to credit John Staub's claim that his website was intended to serve a purely

---

[3] In full, factor five reads:

> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

15 U.S.C. § 1125(d)(1)(B)(i)(V).

4

educational function. Rather, the court ruled to the contrary based on evidence that supported a finding of a profit motive. *Id.* at *3. From that evidence, the District Court inferred that Staub Design sought to ride the coattails of Carnivale's long-established website—an indicator of bad faith. *Id.*

On this record, we are not left with a "definite and firm conviction" that Staub Design's intent was unrelated to consumer diversion. This is especially true when we consider that Staub Design's domain name is the entirety of Carnivale's mark, "The Affordable House." *See Int'l Bancorp,* 192 F. Supp. 2d at 486.

As to factor nine,[4] we directed the District Court to assess the extent to which the mark is distinctiveness. *Carnivale*, 456 F. App'x at 108. *See* § 1125(d)(1)(B)(i)(IX); *see also Shields*, 254 F.3d at 482.[5] Secondary meaning is also relevant to this inquiry. *See E.T. Browne Drug Co. v. Cococare Products, Inc.*, 538 F.3d 185, 199 (3d Cir. 2008). On remand, the District Court considered these factors and again concluded that "the ninth factor slightly supports a finding of bad faith." *Carnivale*, 2012 WL 6814251, at *4.

Although the District Court's analysis of factor nine on remand is not without some shortcomings, we cannot conclude that its findings were clearly erroneous. Further, while the "unique circumstances" cited by the District Court are not exceedingly

---

[4] In full, factor nine reads:

> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i)(IX).
[5] The factors as listed in *Shields* were re-written as part of the Trademark Dilution Revision Act, Pub. L. No. 109-312, § 2, 120 Stat. 1730 (2006).

indicative of bad faith, we find no clear error with their inclusion in the holistic approach. Moreover, when we accord the proper amount of deference to the District Court's balancing of both statutory and non-statutory factors, we are not left with a "definite and firm conviction that a mistake has been committed." *Sabinsa Corp.*, 609 F.3d at 182.

## II.

Accordingly, we will affirm the judgment of the District Court.